## F. G. FLORES v. THE STATE.

No. 2682. Decided December 17, 1913.

Rehearing denied January 21, 1914.

**1.—Murder—Evidence—Rebuttal.**

Where, upon trial of murder and a conviction of manslaughter, the evidence showed that the shooting arose in a political campaign, and the testimony as to the threats of the deceased was admitted in evidence, it was proper to permit the State to introduce testimony as to remarks by defendant about the sheriff and his deputies in connection therewith as bearing on the issue as to who began the difficulty.

**2.—Same—Reputation of Deceased—Evidence.**

Where defendant introduced a number of witnesses who swore that deceased bore the reputation of being a violent and dangerous man, there was no

error in permitting the State to show that the deceased bore the reputation of being a peaceable and inoffensive man.

**3.—Same—Evidence—Character of Deceased.**

Where defendant had offered testimony that on one occasion deceased assaulted him, there was no error in permitting the State to show that deceased was simply doing his duty as an officer.

**4.—Same—Declarations of Defendant—Evidence—Res Gestae.**

Upon trial of murder, there was no error admitting testimony that the defendant, right after the shooting remarked, "The son-of-a-bitch will die before I do," the same being res gestae of the transaction.

**5.—Same—Animus of Witness—Evidence.**

There was. no error in permitting testimony showing the animus of defendant in regard to the feelings he had towards the sheriff who was supported by defendant.

**6.—Same—Evidence—Bill of Exceptions.**

Where the bill of exceptions did not disclose what the paper was which State's counsel held in his hand during the examination of the witness and which was called for by defendant's counsel, or what the same contained, there was nothing to review.

**7.—Same—Argument of Counsel.**

Where the court promptly sustained the objection to the argument of State's counsel and submitted the charge requested, and the remarks were not of that character which would call for a reversal, there was no error.

**8.—Same—Evidence—Character of Deceased.**

Where defendant was permitted to show that his witnesses had had altercations with deceased, there was no error in the court's refusal to let them go into details about their troubles with deceased.

**9.—Same—Charge of Court—Adequate Cause.**

Where defendant was found guilty of manslaughter with the lowest penalty, the court's failure to charge that an assault and battery would be adequate cause presents no error.

**10.—Same—Charge of Court—Limiting Testimony.**

Where, upon trial of murder and a conviction of manslaughter, there was evidence that the defendant who testified had once before been convicted of a felony, and the court instructed the jury that this testimony would only go to the credibility of the witness, this was a sufficient limitation.

**11.—Same—Rule Stated.**

If the testimony can only be used to impeach a witness, it is not necessary to charge on the subject at all.

**12.—Same—Self-defense—Charge of Court.**

Where the court fully charged on self-defense, there was no error in the court's refusal of a special charge fully covered in the main charge.

**13.—Same—Sufficiency of the Evidence.**

Where, upon trial of murder and a conviction of manslaughter, the evidence sustained the conviction under a proper charge of the court, there was no error.

Appeal from the District Court of Bexar. Tried below before the Hon. W. S. Anderson.

Appeal from a conviction of manslaughter; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*George S. Martin* and *Dwyer, Chambers & Watson* and *J. R. Norton,* for appellant.—On question of court's charge on self-defense: Borden v. State, 62 S. W. Rep., 1064; Stanley v. State, 62 Texas Crim. Rep., 306, 137 S. W. Rep., 703; Davis v. State, 63 Texas Crim. Rep., 484, 141 S. W. Rep., 93; Clay v. State, 65 Texas Crim. Rep., 590, 144 S. W. Rep., 280; Mitchell v. State, 65 Texas Crim. Rep., 545, 144 S. W. Rep., 1006; Ballard v. State, 62 Texas Crim. Rep., 435, 138 S. W. Rep., 120; Casey v. State, 54 Texas Crim. Rep., 584, 113 S. W. Rep., 534.

On question of not allowing defendant to use papers which district attorney held in his hand while examining witness: Duke v. State, 61 Texas Crim. Rep., 19, 133 S. W. Rep., 432; Ellis v. State, 59 Texas Crim. Rep., 630, 130 S. W. Rep., 171; Johnson v. State, 66 Texas Crim. Rep., 586, 148 S. W. Rep., 328.

*C. E. Lane,* Assistant Attorney-General, for the State.

HARPER, JUDGE.—Appellant was convicted of manslaughter, and his punishment assessed at two years confinement in the penitentiary.

The unfortunate killing apparently grew out of a heated political campaign. Sheriff Tobin was a candidate for re-election; deceased was one of his deputies and was supporting Mr. Tobin, while appellant was actively opposing the re-election of the sheriff. Defendant offered proof that deceased, because of this opposition; had made threats to take appellant's life, which testimony was properly admitted. Yet when the State offered to prove by Mr. McCurdy remarks of appellant a few moments before the fatal encounter, which showed ill-will towards the sheriff and his deputies, and that appellant was not afraid of them, defendant objects and his first four bills of exception relate to this matter. Defendant's own testimony shows that the difficulty arose over their political differences; he says that deceased said to him, "Flores, I would not like to have anything to do with you, because you are on the side of the cut-throats," when appellant says he replied, "Well, I am not on the side of them thieves." A. Werner, a State's witness, says he and Baird (deceased) went into the Main Bar and drank a beer and took a seat at one of the tables. That appellant came in and took a seat at the table next to him and deceased; that he, witness, spoke to appellant saying: 'Hello, Feliciano, where have you been, I have not seen you in a long time; I thought you were dead.' Then Ora Baird said, 'O, you could not kill him, and after the election he is going to try to come back on our side.' I was supporting John Tobin for sheriff at that time. Ora Baird was supporting Tobin. I could not swear it, but I think Flores was supporting the other side. When Baird said that Flores said, 'Don't you never believe I am coming back on a thief like Tobin's side'; then

Baird said, 'Well, if Tobin is a thief then George Huntress is, too,' then
Flores said, 'You are a liar.' Baird said, 'You mistake me, but I say
that if John Tobin is a thief, Huntress is too.' A little preceding this
Ora Baird was getting up. Baird got up first and I got up directly after-
wards. Then they two got pretty close together. What they done I don't
know. I was in the act of getting up myself, I had both my hands on
the table. I got up shortly after Baird did and got hold of Flores. They
both grabbed their guns at that time. I could not say who drew their
gun first. I held Flores. I said, 'Feliciano, cut this out, this is all fool-
ishness; you have got a family, and you will regret this tomorrow; it
don't amount to anything'. Flores says, 'Turn me loose, go to your
friends. Turn me loose.' He said, 'Turn me loose, God damn you, go
join your friends.' He said, 'Get ready, get ready,' I don't know how
often he said that, but he said it pretty often, and how often enough; any
how it was none of my fight and I got away, and when I got away I guess
about two steps, the shooting occurred. As to who shot first I could
not say."

It was thus evident whether we take the State's or defendant's theory
of the case, that the shooting arose out of this political campaign, and as
before stated, as it was proper to admit all threats of the deceased, for
they would tend to shed light on his action, yet it was also proper to prove
the remarks of appellant about Tobin and his deputies, for such remarks
would likewise aid the jury in passing on the facts introduced in evi-
dence. There is a sharp conflict as to who began the difficulty, and who
in fact first drew his pistol and fired—the State contending that appel-
lant was the aggressor, while defendant and his witnesses would make
deceased the one who used the hostile language on this occasion, and the
provoking cause of the difficulty, and under such circumstances the jury
was entitled to know all the facts leading up to and finally culminating
in this homicide. The reputation of deceased was also another sharply
contested issue. Appellant introduced a number of witnesses who swore
that deceased bore the reputation of being a violent and dangerous man;
the State introduced witnesses who testified that deceased bore the repu-
tation of being a peaceable and inoffensive man, and each side rigidly
cross-examined the witnesses of the other side. The defendant on this
issue introduced John English, who testified that on one occasion de-
ceased assaulted him; that he was stooping over, unhitching his horse,
when deceased came up behind and hit him in the head, and otherwise
mistreated him; that he was not personally acquainted with Baird. On
cross-examination he denied being drunk and disorderly, and that the
trouble was over officer Baird trying to quiet him, and that he, English,
struck the first blow. The State was permitted to prove that English
was drunk and disorderly on that occasion, and Mr. Baird was simply
acting as an officer in trying to quiet him, when English struck Baird
with an iron hook, and then and not until then did Baird strike him, and
afterwards arrested him. As the defendant had offered this attack on
English as evidence that deceased was a violent and dangerous man, one

who assaulted unoffending citizens, it was permissible for the State to show, if it could be shown, that deceased was simply doing his duty as an officer, and did not strike English until he had been assaulted by him, and the bills presenting this matter show no error.

By another bill it is shown that on cross-examination of appellant he was asked that right after the shooting he did not make the remark, "the son-of-a-bitch will die before I do." The record does not disclose that appellant was then under arrest, but if it did do so, the remark, whatever was made, was res gestae of the transaction, and the court did not err in permitting the question to be asked, nor in admitting the testimony. Neither, under the circumstances, was it erroneous to permit appellant to be questioned in regard to feelings towards Sheriff Tobin. As to the question propounded to him in regard to Judge Shook, as it was promptly withdrawn, when objection was made, and the court instructed the jury not to consider the question for any purpose, this does not present error.

Bill No. 11 states: "During the examination of the witness Dr. Sebastian Trevino he testifies that he had been before the grand jury in this case. Counsel for the State held in his hand a document, and referred to it during the examination of the witness on this subject. After the State's counsel had finished the examination of the witness, counsel for defendant moved the court to require the State's counsel to let him have the list, or paper which he had referred to. The court overruled the motion, stating that if the State should attempt to impeach the witness by any member of the grand jury that then he would permit defendant to have anything that the State had." The bill does not disclose what the paper was, nor anything that was in the paper; there is nothing presented for review.

Several exceptions were reserved to argument of counsel for the State. As the court promptly sustained the objections, and gave the special charges requested by appellant in regard to these matters, the remarks are not of that character which would call for a reversal of the case.

The court did not err in refusing to permit the witnesses, Roberts and Gillilan, to go into detail about their troubles with deceased. They were permitted to state that they had had altercations with deceased; that he offered to fight Roberts, and had struck Gillilan, but to permit the details of these transactions to be gone into would lengthen a trial unnecessarily.

As appellant was found guilty of only manslaughter, and his punishment assessed at the lowest penalty, the complaint that the court in his charge did not tell the jury that an assault and battery would be adequate to reduce an offense to manslaughter, presents no error. Had the appellant been found guilty of murder in either degree, his complaint that the charge did not appropriately instruct the jury in regard to this matter, might present error, but as before said as appellant was only found guilty of manslaughter, a more specific charge as to the facts in evidence could not and would not have been of any service.

The complaint that the charge of the court did not instruct the jury that they could only consider the fact that he had once before been convicted of a felony as affecting his credit as a witness is without merit, when the court gave this instruction at appellant's request: "You are instructed that the evidence adduced from defendant on cross-examination whilst testifying that he had been charged and convicted for killing another man, can only be considered by you, as going to his credibility as a witness, and you will not consider same for any other purpose in arriving at a verdict herein." The further complaint that he did not limit the testimony introduced solely for the purpose of impeaching witnesses, presents no error.

In a number of cases this court has held that if the testimony can only be used to impeach a witness it is not necessary to charge on the subject at all. Branch's Crim. Law, sec. 873.

The court on the issue of self-defense instructed the jury fully and fairly, and this portion of the charge is not subject to the criticisms contained in the motion for a new trial, nor was it necessary to give the special charge requested by appellant on this issue, as the charge requested was sufficiently covered in the charge given.

Appellant's counsel have filed an able and interesting brief, and we have given careful consideration to this record, but are of the opinion that no matter is presented in the motion for a new trial that should call for a reversal of the case. It is one of those unfortunate affairs that grows out of an intense political campaign, but this whole record discloses that no matter who is correct as to the beginning of the difficulty, that when it did arise, appellant entered into it with alacrity. The State's witnesses say that appellant before any shot was fired exclaimed several times to deceased to "get ready, get ready," and while he says he did not use that language, but said instead, "If that is your game I am ready," so according to the testimony offered in his behalf, it almost brings this case within the rules governing a mutual combat, and under such circumstances it would be immaterial who fired the first shot.

The judgment is affirmed.

*Affirmed.*

[Rehearing denied January 21, 1914.—Reporter.]

